## People, etc., Use of the Phœnix Nursery Company, v. Harry K. Midkiff et al.

1. CONSTRUCTION—*Entire Instrument Should be Considered.*—In a suit involving the ownership of certain property and turning upon the construction of a written contract, it is for the court to determine, as a question of law, the relation between the parties with reference to the property involved, upon a construction of the entire instrument, fairly considering all its provisions.

2. CONTRACTS—*A Contract Construed.*—The court holds that the contract out of which this suit arose was a contract of sale, subject only to the right of the vendor to retain possession of goods sold in case the vendee failed to pay for same, and that the vendor waived the security of this provision when it divested itself of possession.

3. POSSESSION—*Transfer of, by Delivery of Bill of Lading.*—By indorsing to a vendee, a bill of lading for goods shipped by freight, the vendor transfers to him the possession of the goods.

Debt, on a constable's bond. Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed June 16, 1897.

T. F. SMITH and A. E. DeMANGE, attorneys for appellant.

MILLS BROTHERS and J. M. GRAY, attorneys for appellees.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was an action of debt brought by appellant against Harry K. Midkiff and the sureties on his official bond as a constable. The breach assigned was his levying of an attachment writ against D. G. Owens upon certain nursery

stock of appellant then in the freight house of the I. C. R.
R. Co., at Decatur, and the plea denied its ownership or
right of possession thereof, at the time of the levy.    On the
trial a verdict was returned for the defendant, and the court,
after overruling a motion to set it aside, rendered judgment
against the plaintiff for costs, from which it prosecutes this
appeal.

Appellant shipped the stock in question at Bloomington
on October 23, 1895, consigned to itself at Decatur, with a
bill of lading indorsed by it "Agent, please deliver to D. G.
Owens, agent, upon payment of charges," and on the 24th
they were attached in the freight house of the railroad com-
pany, one of its agents being appointed custodian.    Notice
of appellant's claim was given and a trial had (presumably
of the right of property, but of which neither the result nor
any other particular was shown).

Appellant claims that Owens was merely its agent to
make sales of its stock or take orders therefor, under a pro-
vision of a contract between them which was as follows:
"Third.    If we accept payment from deliveries, you hereby
agree to turn over to us all original orders, we to conduct
deliveries, to hold all stock, original orders and all proceeds
of deliveries until our entire bill with seven per cent interest
thereon, with all expenses of transportation, collection and
return of money to us, is paid; when balance of stock, orders,
etc., will be turned over to you or left with agent or agents,
subject to your order and at your risk."

Only so much of the contract is copied in the abstract or
argument for appellant, but the record shows it is preceded
by the following:

"Bloomington, Illinois, July 2, 1895.

D. G. Owens, Decatur, Illinois.

Dear Sir: We submit the following terms to dealers
desiring to purchase their stock of the Bloomington Phœnix
Nursery.    To those signing this contract we will furnish a
certificate showing that they have agreed to purchase their
stock of us to be sold in the territory specified in the certi-
ficate.    Terms of payment:    First, net cash at nursery with

order.   Any deviation from this rule must be agreed upon early in the season.   Second, bankable note on thirty days' time.   Third, as is above set forth."

It further provides that the company " will heel the stock in trenches at the nursery packing ground, when the contractor must satisfy himself as to the count before assorting retail orders;" that twine, rope, burlap, extra moss, straw, etc., will be furnished at reasonable rates; that $2.50 will be charged for full sized boxes, including moss, straw, etc., used in packing the same; that packages will be " delivered here at the depot free;" that " in case the contractor's net wholesale bill is less than $100, ten per cent will be added to the within prices;" that " this contract is to cover only the retail sales of contractors," and that the company reserves the right to stop the sale of stock at any time should the demand exceed its supply.   After some further suggestions, not pertinent to the question here, the company say in conclusion :  " We desire to sell stock to none but thorough, trustworthy men, who will take hold of the business with a will, conduct it fairly and honorably, and pursue it to the end," and asked him, if disposed to enter heartily into the work and the terms thus proposed suited him, to signify his acceptance by signing the blank below.   He did so and got his certificate.   To the contract was appended a list of the company's stock, with " net cash prices."

It was for the court to determine, as a question of law, what relation between the parties, with reference to the property mentioned, was established, upon a construction of the instrument fairly considering all of its provisions. Chickering et al. v. Bastress et al., 130 Ill. 214.   This familiar general rule of construction was expressly applied in a case like this, where the court recognized the force of one view from a particular provision, but adopted the other from a consideration of the whole.   Lens v. Harrison, 148 Id. 604. .  Here, what precedes the particular provision relied on by appellant seems clearly to indicate that the relation contemplated was that of vendor and vendee.   The proposition submitted, with list of stock and prices, was not a

general advertisement nor intended for consumers desiring to use the stock in the improvement of their premises, but to "dealers" desiring to "purchase" stock to be "sold" in a certain territory. Two distinct and absolute sales—one by the company to the dealer, and the other by the dealer to the consumer—thus appear to be contemplated. There is no necessary inconsistency between this inference and the particular provision "third." Like the first and second, it is under the heading or general statement of the "terms of payment." The first two seem to relate to payments directly by Owens—on or before delivery to him "at the depot" in Bloomington—either by cash or bankable note. Such payment and delivery would certainly consummate a sale to him, and leave no possible room for the idea of agency or of any relation between the company and the consumer. The third relates to cases in which payment is made, not by him directly, but by his vendees, for him, on delivery at Decatur, in good condition and at the time fixed therefor by the order, as appears from the sample order in evidence. By that provision, if the company sees fit to accept such payment, which does not appear to be obligatory in any case, it would have the right to "conduct" the deliveries (which would certainly include the right to make them by any agent or agents it should appoint for that purpose), and hold all the orders and stock until its entire bill against Owens, with the interest and expenses mentioned, should be paid, and the balance of stock, orders, etc., if any, it was to account for and turn over to him—not as the company's agent, but as the absolute and rightful owner, whose entire debt for it had been paid. Thus this provision was merely security to the company for the price of goods sold to him, with interest and extra charges. It might well require such security, in view of his financial condition. He seems to have been unable to comply with the alternative terms of payment, and the company made advances, not as compensation for his services as agent in canvassing, but for him to live on while canvassing, and which he was to repay. As the court said of a clause of the contract in

the case of Chickering v. Bastress, reserving to the vendors the right to transfer, remove, sell or repossess themselves of the pianos in question, at any time, without notice; so we say of this provision, that " we regard it as in the nature of the insecurity clause usually inserted in chattel mortgages;" and as in that case the vendors might have lawfully availed themselves of it, and held the property against the execution creditors of the vendee, if they had actually repossessed themselves of it before the levy, so here, the nursery company might have lawfully enforced this provision as against the attaching creditor of Owens, notwithstanding an actual sale to him, if it had retained the possession of the nursery stock in question—as it could have done by " conducting " the delivery through some other person as its agent for that purpose. But it did not, in all cases, if in any, so avail itself of this right. In this case Mr. Rosney, the president of the company, testified : " On the day we shipped the goods I asked Owens if he would act as our agent to deliver them at Decatur, and he said he would "— a question altogether inconsistent with any understanding on his part that Owens was already their agent in respect to them.

The contract nowhere characterizes him as the agent, factor or salesman of appellant, but as dealer, purchaser and contractor. It makes no provision for his compensation as agent. It charges him absolutely with prices and extra expenses, and leaves him to obtain remuneration by selling at prices in excess of the aggregate of these, but without limitation as to such excess. The goods were perishable and not to be returned in specie, and at his own risk of loss he was debtor for the price and extras charged.

We therefore hold that he was a purchaser, subject to this provision only in case he failed to make payment by net cash with the order ' or bankable ' note at thirty days, and that the company waived the security of this provision when it divested itself of possession. This we think it did, as between the company and him, by transferring the bill of lading indorsed to him. It was not like a shipment C.

O. D., nor did Owens obtain it by any fraud or misrepresentation. The company dealt with him under the contract, which made him chargeable, like a purchaser, with the freight from Bloomington. If he had been a mere agent to receive the company's goods and deliver them to its customers for it, he would hardly have been charged with freight without provision for its repayment, together with compensation for his services. The order for delivery to him upon payment of charges, did not make such payment a condition precedent as between the nursery company and Owens, nor as between him and the railroad company. It was in legal effect an actual delivery by appellant, and the question of payment of charges was one wholly between him and the railroad company. The latter could lawfully deliver to him without a precedent payment of the charges.

We perceive no reason or motive for designating him as "agent" in the indorsement, except to keep off his creditors—to cover up a sale and preseve a lien in the nursery company for the price of the stock.

In the abstract appears what is there called a "sample copy" of order taken by Owens as salesman of appellant, which, after the number and date, reads, "I have this day bought of Phoenix Nursery Company the following bill of nursery stock," etc., and after giving the list and prices, proceeds, "For which I promise to pay Phoenix Nursery Company, or bearer," the total amount stated. But the record shows what appears to be the printed form furnished by the company, in which there are blanks for the name of vendor and promisee, and the words "Phoenix Nursery Company" are written. The form of orders is not prescribed nor indicated by the contract, and the form used can not change the effect of the contract. Owens could as well have filled the blanks with his own name. The contract fully provided for the rights of the company by requiring net cash, or bankable note, or collection by it on its own delivery; and this form rather than that may have been dictated to Owens by some idea of convenience or a purpose to hinder his creditors.

There is no dispute as to what we consider the decisive facts. They appear in writing, and the questions are as to their legal effect, which are questions for the court. We hold that by the contract the goods levied on were sold by appellant to Owens, and by the indorsement of the bill of lading delivered to him; and therefore deem it unnecessary to discuss the instructions. In our view of the law, no other verdict than the one rendered could have been sustained. The judgment will therefore be affirmed.